UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KEVIN R. COMEAUX** | * | **CASE NO. 19-12801** |
| vs. | * | **SECT. S(3)** |
| **UNITED STATES OF AMERICA** | * | **JUDGE LEMMON** |
| | * | **MAG. DOUGLAS** |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION *IN LIMINE* AND *DAUBERT* MOTION TO EXCLUDE/LIMIT
DR. WATSON FROM OPINING ON BIOMECHANICS, ACCIDENT
RECONSTRUCTION, AND PHYSICS BECAUSE HE IS
(1) NOT QUALIFIED AND (2) HIS OPINIONS ARE UNRELIABLE**

**NOW INTO COURT,** through the undersigned Assistant United States Attorneys, comes Defendant, the United States of America, and opposes Plaintiff Kelvin R. Comeaux's motion *in limine* and *Daubert* motion to exclude/limit Dr. Watson from opining on biomechanics, accident reconstruction, and physics because he is (1) not qualified and (2) his opinions are unreliable. Rec. Doc. 12. Quite specifically, Plaintiff's motion only seeks to limit Dr. Watson's opinions of biomechanics/accident reconstruction in respect to Dr. Watson's opinion of Plaintiff's shoulder injury. However, Plaintiff has not challenged Dr. Watson's expertise as an orthopedic surgeon to render general causation opinions as to Plaintiff's shoulder injury. Moreover, Plaintiff is not challenging Dr. Watson's expertise as an orthopedic surgeon to render opinions as to Plaintiff's injuries to his neck, back, and/or SI joints.

Despite the tone of Plaintiff's motion, Dr. Watson is not – and the United States will not offer him as – an expert in accident reconstruction or biomechanics. However, Dr. Watson will be offered as an expert in orthopedic surgery to render an opinion on Plaintiff's shoulder injury. Dr. Watson opines that Plaintiff's shoulder injury was not caused by the subject accident since

1

the labral tear shows evidence of tendinosis and is more likely than not degenerative in nature (an opinion shared by Plaintiff's own physician, Dr. Lurie). Yet, Plaintiff has honed in on a single, contextual statement by Dr. Watson as grounds for his motion – Dr. Watson noted that pursuant to guidance from the American Academy of Orthopedic Surgeons (AAOS) Plaintiff's body would have moved toward the direction of the collision, opposite of Plaintiff's injured shoulder. However, as an expert orthopedic surgeon, Dr. Watson is permitted to rely on facts and data reasonably relied on by other experts in his field.

Dr. Watson will first offer expert testimony on the lack of objective evidence of Plaintiff's claimed injuries as a result of this accident based on his review of Plaintiff's medical records and his medical expertise. Secondly, he will offer testimony about specific courses he has taken on the effects of certain collisions and injury causing mechanisms generally. The classes in which Dr. Watson has attended have been sponsored by the AAOS and are naturally accepted in the medical community; thus, Dr. Watson is permitted to rely on the conclusions instructed in these classes.

Additionally, the United States asserts that Dr. Watson's expert medical testimony on the lack of objective evidence of injury alone is admissible and sufficient to show that Plaintiff's claimed injuries are not a result of this accident. Still, his additional testimony based on material obtained from the AAOS is also admissible as reliable and accepted, and simply bolsters Dr. Watson's own admissible medical opinion that this accident did not cause Plaintiff's claimed injuries. Plaintiff provided no basis for this Court to find that Dr. Watson's testimony and opinions are inadmissible under either *Daubert* or the Rules of Evidence.  Moreover, in a bench trial such as this, the Court has much discretion to weigh the credibility of the witness at trial. Therefore, Plaintiff's instant objection to Dr. Watson's report and opinions should be denied.

**I.      Dr. Watson is a qualified board certified orthopedic surgeon.**

The United States hired Dr. Watson, a board certified orthopedic surgeon, to evaluate Plaintiff's medical records and render opinions on Plaintiff's claimed injuries resulting from the accident at issue. *See generally* Rec. Doc. 12-2. Dr. Watson practices in general orthopedics, which includes shoulder, spine, knees, hips, feet, and ankles. *See generally* Rec. Doc. 12-4, pp. 7-9. In addition, Dr. Watson has attended courses by the AAOS on the biomechanics of vehicle collisions and passenger mechanics. *Id.* at pp. 90-91. Specifically, Dr. Watson attended the AAOS Whiplash and Other Reported Injuries: The Science of Accident Reconstruction and Impact/Vehicular Biomechanics just this year.

Dr. Watson is fully qualified to testify as an expert in orthopedic surgery. Plaintiff has not disputed that fact. The United States also does not dispute that Dr. Watson is not a technical accident reconstructionist or biomechanical engineer. However, the fact that he is not an expert in accident reconstruction or biomechanical engineering alone is insufficient to wholly exclude Dr. Watson's opinions under *Daubert* and the Federal Rules of Evidence because as an expert, he is permitted to rely on outside acceptable facts and data.

**II.     Dr. Watson properly relied on guidance from the AAOS to bolster his opinions.**

In *Daubert*, the Supreme Court held that a trial court has a duty to screen expert testimony for both its relevance and reliability. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). An expert's opinion must have a "reliable basis in the knowledge and experience of his discipline." *Id.* at 592, 113 S.Ct. at 2796. Specifically, the court must determine that the reasoning and methodology underlying the testimony is scientifically valid and that the reasoning and methodology can properly be applied to the facts in issue. *Id.* at 592–93, 113 S.Ct. at 2796. In addition, under Federal Rule of Evidence 703, an expert must base his opinion on facts and data of a type reasonably relied on by experts

3

in the field. *Id.* at 595, 113 S.Ct. at 2797–98.

When evaluating the reliability of expert testimony, a district court may rely on the following illustrative (but not exhaustive) list of factors: has the expert's theory or technique (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community. *Id.* at 593-94, 113 S.Ct. 2786. It is the district court's responsibility to ensure that an expert, *whether basing testimony on professional studies or personal experience*, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1167, 143 L.Ed.2d 238 (1999) (emphasis added). The Fifth Circuit has read *Daubert* to permit expert testimony on causation when the testimony is grounded in the methods and procedures of medical science, and medical doctors may testify on causation based upon a review of medical records, the doctor's experience, and a broad review of the literature. *Carroll v. Morgan*, 17 F.3d 787, 789-90 (5th Cir. 1994). Dr. Watson based his opinions on both his personal experience and specific instructions by the AAOS. His testimony is therefore reliable and admissible.

During his deposition, Plaintiff's counsel spent a significant amount of time questioning Dr. Watson on his experience and training to support the opinion Plaintiff is seeking to strike. *See* e.g. Rec. Doc. 12-4, pp. 88-93. Dr. Watson freely admits he is not a biomechanical engineer and is not seeking to be admitted as one in this matter. *Id.* However, Dr. Watson does explain the specific training he received directly from the AAOS to bolster and provide context to his opinion of Plaintiff's shoulder injury. *Id.* Indeed, Dr. Watson describes videos and material presented at AAOS training that generally illustrate how individuals move and react to different

types of accidents. *Id.* Ignoring the description of training provided by Dr. Watson, Plaintiff's counsel simply presses the issue that Dr. Watson is not a biomechanical engineer, a point that is not contested by Defendant. *Id.*

Moreover, Plaintiff's instant motion seemingly ignores that Dr. Watson's causation opinion on Plaintiff's shoulder injury is based on the review of the objective diagnostic imaging and Plaintiff's own subjective complaints, Rec. Doc. 12-2 at pp. 13-14. Any biomechanical engineering opinion is merely provided secondarily to give context to and bolster his opinion. *Id.* More importantly, Plaintiff has provided no evidence to show that the AAOS guidance on which Dr. Watson relied is in any way unacceptable, unreliable, or in any other way an inappropriate addition for Dr. Watson's opinions. Dr. Watson's opinions, therefore, are reliable and admissible under *Daubert* and the Federal Rules of Evidence.

**III.     If anything, Plaintiff's objections to Dr. Watson's opinions go to the credibility and weight of those opinions, not admissibility.**

The Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2798. It is a general rule that questions related to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility, and should be left for the fact finder's consideration. *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

This matter is set for a bench trial on March 8, 2021, which means the Court will be the trier of fact. The Fifth Circuit has held that "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district court judge sits as the trier of fact in place

of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). As this Court itself noted, *Daubert* requires a choice of admit or exclude, but a judge in a bench trial should have the discretion to admit questionable technical evidence, but then only give it the weight it deserves. *See In re Bordelon Marine, Inc.*, 2012 WL 1804632, at *2 (E.D.La. 2012) (quoting *Thompson v. Rowan Cos.*, 2007 WL 724646, at *1 (E.D.La. 2007)).

Unlike *Rivera v. Robinson*, 2020 WL 4504705 (E.D. La. 2020), which was a jury trial, here, this Court will be the ultimate fact finder, and it will be up to the Court to determine what weight and credibility to give to Dr. Watson's testimony at trial, not a jury. Plaintiff's objections to Dr. Watson's testimony can be raised via cross-examination, and after hearing all of the evidence, the Court will decide whether to accept or reject Dr. Watson's opinions. Wholesale exclusion of Dr. Watson's opinions is therefore not warranted at this time. Also, in *Rivera*, this Court rejected Sergeant McClelland based on the methodology used to determine a specific fact in his opinion. *Id.* at *2. Specifically, Sergeant McClelland was tasked with determining the speed of one of the drivers, a key fact to determine liability. *Id.* Since Sergeant McClelland did not use a correct methodology, his opinion was rejected. *Id.* Here, Dr. Watson is charged with determining causation of Plaintiff's alleged injuries. Further, Dr. Watson opined that the objective injury to Plaintiff's shoulder - the labral tear - showed evidence of tendinosis and is more likely than not degenerative in nature. This opinion was reached by reviewing the objective findings in the MRI in correlation with Plaintiff's delayed subjective complaints. Rec. Doc. 12-2 at pp. 13-14. To date, none of Plaintiff's physicians, as well as Dr. Watson, have opined that Plaintiff suffered an acute labral tear as a result of the subject accident. Dr. Watson merely states contextually that, pursuant to standards set forth by the AAOS, Plaintiff's body wouldn't have moved in a manner to create the labral tear, which is not surprising given the objective diagnostic

imaging illustrate a degenerative change, not an acute tear. *Id.* Therefore, Plaintiff's reliance on *Rivera* is misplaced and the Court should hear all testimony to determine credibility at trial.

## IV. Conclusion.

For the reasons stated herein, the Court should summarily deny Plaintiff's motion *in limine* and *Daubert* motion to exclude/limit Dr. Watson from opining on biomechanics, accident reconstruction, and physics because he is (1) not qualified and (2) his opinions are unreliable.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY

*/s/ Brock D. Dupre*
MARY KATHERINE KAUFMAN (#32719)
BROCK D. DUPRE (#28563)
Assistant United States Attorneys
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3008
Facsimile: (504) 680-3184
Mary.Katherine.Kaufman@usdoj.gov
Brock.Dupre@usdoj.gov
*Counsel for the United States of America*